THOMAS CASCADEN, JR., Appellant, v. THE CITY OF WATER-
LOO, *et al.*

**Wards of City:** CHANGE:   *Ordinances.*   Code, title 5, section 641,
   authorizing the creating and changing of city wards, does not pro-
   vide whether the power shall be exercised by ordinance or resolu-
   tion.   Section 680 provides that cities may make ordinances "for

106   673
e117   631
106   673
125   349
126   684
106   673
130   68
106   673
137   183

carrying into effect and discharging the powers and duties conferred by this title." *Held*, that a change of the wards of a city must be by ordinance, and not by a resolution.

AMENDMENT OF ORDINANCE. An ordinance fixing the wards of a city can be amended or repealed only by another ordinance, and not by a resolution.

SAME. Where an ordinance divides a city into four wards, a resolution changing two of them, and creating a fifth, is void under Code, section 6×1, where it does not contain "the entire ordinance or section revised or amended," as required by such section

ADOPTION OF RESOLUTION. A resolution of a city council not adopted by a majority of the whole number of the council, as required by Code, section 683 is void.

**Rights of Taxpayer of Town: INJUNCTIONS.** A taxpayer has a right of action to restrain a city from holding an election in a new ward, claimed to have been illegally created, and from spending the public revenues in defraying the expenses thereof.

*Appeal from Black Hawk District Court.*—HON. A. S. BLAIR, Judge.

THURSDAY, DECEMBER 15, 1898.

PLAINTIFF, a taxpayer of the city of Waterloo, brings this action to restrain the defendants, the mayor and council of said city, from enforcing a certain resolution creating a new ward in said city. Defendants' demurrer to plaintiff's petition was sustained, and, plaintiff electing to stand on his petition, judgment was rendered against him, from which he appeals.—*Reversed.*

*Boies & Boies* for appellant.

*J. E. Williams, J. A. Mears, Courtright & Arbuckle,* and *Alford & Gates* for appellees.

GIVEN, J.—I.  The petition filed March 16, 1898, and an amendment thereto, are, in substance, as follows: That the defendant city is a city of the second class; that the other defendants are the mayor and city council thereof, and that plaintiff is a resident of said city, is the owner of taxable real and personal property therein, and has been a taxpayer

in said city for many years; that on the fourteenth day of September, 1896, an ordinance was duly adopted dividing said city into four wards, under which the defendant officers were duly elected; that on January 24, 1898, said city council, by a vote of four for to two against (the other two members being absent), adopted a resolution creating an additional ward out of portions of the Third and Fourth, to be known as the Fifth ward. Said resolution provided: "That the necessary steps be taken at the next city election for the election of two councilmen from said Fifth ward, hereby created." It is alleged that said resolution is void for the reasons that it was not adopted by the required vote; that it does not contain the entire ordinance or sections attempted to be revised, amended, or repealed thereby, and was not passed in the manner required by law for the passage of ordinances, for that it was not read on three different days, nor the reading dispensed with, and was not passed by a majority of the whole council. It is further alleged that defendants will, unless restrained, proceed under said resolution to hold and cause to be held in said Fifth ward an illegal and unauthorized election, and will disburse the public revenues to which plaintiff has contributed in defraying the expenses thereof; that they will declare persons elected to be members of the city council, and entitled to compensation as such and as members of the board of equalization out of the public moneys, to which plaintiff has contributed and will hereafter contribute. Plaintiff prays for a decree enjoining such action, and for general relief. Defendants demurred to the petition upon the following grounds: "(1) The petition shows upon its face that the plaintiff is not entitled to the relief demanded, or to any relief. (2) No statements or allegations are contained in said petition to invoke the powers of or give jurisdiction to a court of equity. (3) The petition shows upon its face that the plaintiff has a speedy and adequate remedy at law. (4) The petition shows upon its face that the plaintiff has no interest in the subject-matter other and differently from any other citizen of the city or general public has, and for that reason said plaintiff

cannot maintain this action." This demurrer was sustained generally.

II. The first question discussed is whether the petition shows that plaintiff is entitled to maintain this action. It shows that he has contributed, and will, as a taxpayer, contribute to the city's revenues, and that, unless restrained, the defendants will proceed to carry out said illegal resolution, and to illegally pay the expenses thereof from said revenues; and these allegations we must, for the purpose of the demurrer, take as true. Counsel for appellees say: "In this country the right of resident taxpayers to resort to equity to restrain municipal corporations or their officers from transcending their lawful powers in any mode which will injuriously affect the taxpayers, such as making unauthorized appropriations of corporate funds, or an illegal disposal of corporate property, or levying or collecting void or illegal taxes or assessments, is recognized in numerous cases, and is, perhaps, the prevailing doctrine on this subject; but this rule is one that has grown up in most of the states of the Union in recent years, and is really an exception to the general rule of equity, and only applies to prevent the illegal disbursement of corporate funds, or the illegal disposal of corporate property." Again, they say: "The rule that a taxpayer may maintain an action to enjoin a municipality or its officers from illegally disbursing or appropriating corporate funds, or disposing of corporate property has been followed by the courts of Iowa in numerous cases, nearly all of which are cited by appellant in his argument." The claim is that this is not an action to restrain the using of the public funds to pay expenses in carrying out said resolution, and in compensating the persons elected, but to restrain defendants from fixing voting places, holding an election, and issuing certificates of election to persons elected. We do not so view the petition. It asks to restrain the carrying out of said resolution, not alone because it is illegal to do so, but because it is illegal, and in doing so the public revenue will be illegally expended. The case is clearly within the rule that entitles a taxpayer to maintain an

action to restrain an illegal disposal of the corporate funds.
Of the cases cited we note *Brockman v. City of Creston,* 79
Iowa, 587; *Snyder v. Foster,* 77 Iowa, 638.   This view of
the petition answers appellees' contention that appellant's
remedy is adequate at law, and that the matters alleged are
not sufficient to call for equitable relief.

III.    The next question is whether the city council could
create the new ward by resolution, appellant's contention
being that it can only be done by ordinance.   There is no dis-
pute but that the city council had power to create the
new ward.  Code, section 641.  Appellant insists that
the statute requires this power to be exercised by ordi-
nance, and cites many authorities to the effect that, where
the statute requires a power to be exercised in a particular
manner, it cannot be exercised in any other.   Of the cases
cited we only mention *Ryce v. City of Osage,* 88 Iowa, 558;
*Henke v. McCord,* 55 Iowa, 378; *Blanden v. City of Ft.
Dodge,* 102 Iowa, 441; *Noyes v. Mason City,* 53 Iowa, 418.
Appellees concede that such is the law, but contend "that the
statutes, or rather the law, of this state does not require that
wards be established by ordinance."  This action being under
the present Code, we turn to it to solve this question, only
referring to prior legislation and decisions thereon so far as
they aid in construing the present statute.   The legislation
in respect to cities and towns is largely, if not entirely, con-
tained in title 5 of the present Code, which title is devoted
entirely to that subject, and is divided into fourteen chapters.
An examination of title 5 shows that municipal corporations
are authorized to act by ordinance and by resolution,—some-
times by ordinance only, sometimes by resolution only, some-
times by ordinance or resolution.   For instance, sections
640, 669, 675, 676, and paragraph 11 of section 668, require
powers conferred to be exercised by ordinance; sections 628
and 810 allow the powers therein referred to to be exercised
by resolution; and sections 619, 620, 751, 798, 799, 802, 811,
825, 836, 841, and 842 permit the powers therein referred to
to be exercised by ordinance or resolution.   Section 641,

which authorizes the creation and changing of wards, is silent as to whether that power shall be exercised by ordinance or resolution. Section 680 is as follows: "Municipal corporations shall have power to make and publish from time to time ordinances not inconsistent with the laws of the state for carrying into effect or discharging the powers and duties conferred by this title, and such as shall seem necessary and proper to provide for the safety, preserve the health, promote the prosperity, improve the morals, order, comfort and convenience of such corporations and the inhabitants thereof, and to enforce obedience to such ordinances by fine not exceeding one hundred dollars, or by imprisonment not exceeding thirty days." Section 482 of the Code of 1873 was the same as this section 680, except that the word "title" is used therein instead of "chapter," as in this section. This change was necessitated by the rearrangement of the titles and chapters, and leaves the effect the same, the word "chapter" in section 482 being quite as broad in its application as the word "title" in the present Code. Appellant's contention is that, the power to establish and change wards conferred by title 5, section 680, requires that it shall be exercised by the enactment of an ordinance. There being no direct provision as to whether the power conferred by section 641 shall be exercised by ordinance or by resolution, we are called upon to construe said section 680 in the light of other provisions of the title, and of prior decisions, and say whether this power can only be exercised by ordinance. The two instances referred to in which the council may act by resolution are in proposing a change of name of the corporation, and submitting the same to a vote of the people (section 628), and in declaring it advisable to make street improvements and sewers (section 810). Said sections authorizing action by ordinance or resolution relate to annexation of territory, the acceptance of dedicated streets, etc., the changing of water courses, the reconstruction of street improvements or sewers, the levy of special assessments for street and sewer improvements, the correction of informal or irregular assessments, for the issu-

ance of street improvements and sewer certificates, and for the payment of the costs of street improvements or sewers. It is also provided as to ordinances that "no ordinance shall contain more than one subject, which shall be clearly expressed in its title; and that no ordinance or section thereof shall be revised or amended unless the new ordinance contain the entire ordinance or section revised or amended, and the former ordinance or section to be repealed." Section 681. "Ordinances of a general or permanent nature and those for the appropriation of money shall be fully and distinctly read on three different days, unless three-fourths of the council shall dispense with the rule." Section 682. Section 686 requires all ordinances to be recorded in a book kept for that purpose, and to be authenticated by the signature of the presiding officer and the clerk; "and all ordinances of a general or permanent nature, and those imposing any fine, penalty, or forfeiture, shall be published," etc. There are no such provisions with respect to resolutions, and it is manifest that much greater care is required in forming, adopting, publishing, and preserving ordinances than resolutions, and especially so as to such as are of a general or permanent nature. Ordinances are of a general nature when general in their application, and of a permanent nature when their provisions, unless repealed, will continue in force indefinitely. It will be observed that in the instances wherein action by resolution, or by resolution or ordinance, is authorized, the power exercised is not of a general or permanent nature; that the ordinance or resolution is not general to all in its application, and does not continue in force indefinitely, but only until its purposes are accomplished. The power to divide the city into wards is certainly a power of a general and permanent nature, for, when exercised, it applies to all alike, and, unless repealed, continues in force indefinitely. In *McManus v. Hornaday,* 99 Iowa, 508, the question was whether the grade of a street established by ordinance of the city of Keokuk could be changed by resolution. That city exists under a special charter, which authorizes the city council to make and publish ordinances upon.

certain subjects, among which are "such laws and ordinances as to them shall seem necessary to provide for the safety, preserve the health, promote the prosperity and improve the morals, order, comfort and convenience of said city and the inhabitants thereof." Section 680 of the Code not only so provides, but also provides for the enactment of ordinances "for carrying into effect or discharging the powers and duties conferred by this title." The power to establish and change wards, as we have seen, is conferred by that title. After holding that the council of the city of Keokuk had power to change the grade of the street, we held that it could "only be legally exercised by the enactment and publication of ordinances." It is true, in that case there was no provision for exercising any of the powers conferred by resolution, and it is equally true that in this way there is no express authority for creating or changing wards by resolution. We have said in that case, "We do not think that a matter of such importance to property owners as the establishment of grades was intended to be exercised by the mere passage of resolutions." Certainly the establishing or changing of wards in a city is of equal importance. *Merchants' Union Barb-Wire Co. v. Chicago, B. & Q. Ry Co.,* 70 Iowa, 106, is cited. In that case the city of Des Moines had, in 1866, granted to defendant by ordinance the right to construct its track and side tracks upon Vine street, "but requiring that upon the part of the street whereon plaintiff's lots abutted the defendant shall build its track on the north side." In May, 1874, the city, by resolution, authorized the defendant to construct another track in said street opposite plaintiff's property. The first question considered was whether, in view of the restriction contained in the first grant, the city could grant further privileges. It is said: "In our opinion, the ordinance simply grants the right of way in the north half of the street, and is not a restriction in the nature of a prohibition against the occupancy of the south side. That side was left by the ordinance just as whole a street as before the ordinance was passed." The third paragraph of that opinion holds that the grant of the right of way in

streets is simply a permission, and that: "There exists no necessity for expressing this grant of authority by ordinance, as the statute (Code 1873, section 464) conferring authority upon a city to authorize or forbid the construction of railway tracks in its streets does not prescribe the manner of exercising the authority, whether by ordinance, resolution, or vote duly recorded. The statute being silent upon this subject, the authority may be exercised by resolution duly passed, or vote duly taken, appearing in the proper record of the city." Notwithstanding said section 464 is included in chapter 10 of title 4 of the Code of 1873, no reference is made in this opinion to said section 482 of that title and chapter. That section, as we have seen, provided for carrying into effect the powers conferred by that chapter by making and publishing ordinances. If it may be said that this second grant or right of way in Vine street could be made by resolution, still we are of the opinion that a matter of such general and permanent nature as the establishment of wards was not intended by the legislature to be made in any less definite and enduring manner than by ordinance. There are a number of Iowa cases bearing more or less directly upon the question, but, regarding the holding in *McManus v. Hornaday* as directly applicable and controlling, we need not refer further to these citations. Our conclusion is that the creating or changing of the boundaries of wards must be by ordinance.

IV. The question whether an ordinance can "be amended, repealed, or suspended by resolution or vote" is suggested, but not determined, in *Merchants' Union Barb-Wire Co. v. Chicago, B. & Q. Ry. Co., supra.* Surely, when the statute requires that the power conferred must be exercised by ordinance, and it has been thus exercised, the ordinance can only be amended, repealed, or suspended by ordinance. In amending, repealing, or suspending such an ordinance the council act under the same authority as authorized the adoption of the prior ordinance. Another potent reason is that ordinances of a general or permanent nature are required to be published in a certain

manner, and thereafter stand as the law, of which all must take notice. Resolutions are not required to be so published, and, therefore, the public would not be informed of amendments, repeals, or suspensions of ordinances made by resolution. We conclude that ordinances of a general or permanent nature cannot be amended, repealed, or supended by resolution, but by ordinance only.

V.   It will be observed that there was an ordinance fixing the boundaries of the four wards, and that by this resolution the boundaries of two of these wards were changed, and a fifth ward created. Thereby it was sought to revise and amend the ordinance. If an ordinance might be revised, repealed, or amended by resolution, this resolution is not effective for that purpose, as it does not "contain the entire ordinance or section revised or amended," as required by section 681, and, therefore, the ordinance remains in full force. Another reason why this resolution cannot be effective is that it was not adopted by concurrence of a majority of the whole number of the council, as required by section 683. Our conclusion upon the whole record is that the court erred in sustaining the demurrer to plaintiff's petition, and the judgment is, therefore, REVERSED.